## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____

| | |
|---|---|
| ALL LEISURE HOLIDAYS LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN NOVELLO, and DATABASE | ) |
| MARKETING SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## VERIFIED COMPLAINT FOR TEMPORARY
## AND PERMANENT INJUNCTION AND FOR DAMAGES

Plaintiff, ALL LEISURE HOLIDAYS LIMITED, sues Defendants, STEVEN

NOVELLO and DATABASE MARKETING SOLUTIONS, INC., and alleges:

### THE PARTIES

1.      Plaintiff, ALL LEISURE HOLIDAYS LIMITED, is a foreign corporation, which

is also known as "All Leisure Holidays Limited Inc.", "All Discovery Cruising", and "All

Discovery Cruising North America" (hereinafter referred to as "All Leisure").  All Leisure has

its principal place of business in England, is licensed to do business in the State of Florida, and

does business in, among other places, Broward County, Florida.  All Leisure is in the business of

selling, marketing and operating cruise ships throughout the world.  All Leisure operates the

cruise brands Hebridean Island Cruises, Swan Hellenic, and Voyages of Discovery.  All Leisure

is part of All Leisure Group PLC, its parent company, which is the largest British owned cruise

ship company in the world.

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

2.      Defendant, STEVEN NOVELLO (hereinafter referred to as "Novello"), is a resident of Palm Beach County, Florida, over the age of eighteen, and otherwise *sui juris*. Novello is the former President of All Leisure.

3.      Defendant, DATABASE MARKETING SOLUTIONS, INC. (hereinafter referred to as "DMS"), is a corporation organized under the laws of the Commonwealth of Massachusetts, has its principal place of business in the Commonwealth of Massachusetts, is not licensed to do business in the State of Florida, and does business in Broward County, Florida. DMS is a database marketing and consulting firm, which develops marketing campaigns to generate leads, target prospects and increase revenue.  On or about April 1, 2011, All Leisure engaged DMS to provide marketing services to the U.S. office of All Leisure.  At all times material hereto, DMS acted by and through the actions of its Vice President, Susan Lee, who is a resident of Broward County, Florida.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. §1332(a)(2), the Court has subject matter jurisdiction over the claims asserted because Novello is a citizen of the State of Florida, DMS is a citizen of the Commonwealth of Massachusetts, and the amount in controversy exceeds the value of $75,000, exclusive of interest, costs, and attorneys' fees.

5.      Novello is subject to the personal jurisdiction of this Court because he is a citizen of the State of Florida.

6.      DMS is subject to the personal jurisdiction of this Court pursuant to the Florida Long Arm Statute, Section 48.193(1)(b), Florida Statutes, because it committed a tortious act within the State of Florida; Section 48.193(1)(f) because it caused injury to persons or property within Florida arising out of an act or omission outside this State; Section 48.193(1)(g) because it breaching a contract in this State by failing to perform acts required by the contract to be

**BERGER SINGERMAN**
attorneys at law                 *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

performed in this State; and Section 48.193(1)(a) because it operates, conducts, engages in or carries on business or a business venture within Florida; and Section 48.193(2) because it engages in substantial and not isolated activity in Florida.

7.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District.

## GENERAL ALLEGATIONS

8.     All Leisure has expended considerable money and time developing and maintaining proprietary and valuable information, including, but not limited to, business and corporate strategies, business plans, product strategies, product cost and pricing information, customer lists and information, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial information, contracts, agreements, computer programs, technical processes, manuals, and other information pertaining to the financial condition, business affairs or business prospects of All Leisure. This information (hereinafter referred to as "All Leisure's Trade Secrets") is the life blood of All Leisure's business. Dissemination and use of All Leisure's Trade Secrets to and by competitors would allow them to compete better with All Leisure and significantly impact All Leisure's business operations.

9.     One of All Leisure's most important assets is its customer list and customer information.  If this list and information became public or be utilized by All Leisure's competitors, All Leisure would lose both the trust of its customers and the ability to fairly and effectively compete in the marketplace.

10.    All Leisure's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons

outside of All Leisure who can obtain economic value from its disclosure or use; and are subject to efforts that are reasonable under the circumstances to maintain the secrecy of the information.

11.     All Leisure took precautionary measures to protect All Leisure's Trade Secrets, including, but not limited to, instituting a data protection policy, which governed employees' access to All Leisure's Trade Secrets, required the use and updating of passwords, and set forth requirements for storage and physical security (desks, doors, visitors, laptops and storage devices) of such information and data.

12.     Novello joined All Leisure on May 11, 2010 as President.  As President, Novello was responsible for the operation of the company throughout North America.

13.     During his more than two-year tenure with All Leisure, Novello came to know and was entrusted with All Leisure's Trade Secrets.

14.     Prior to and during his employment, Novello was advised and aware of All Leisure's data protection policy, that All Leisure's Trade Secrets were to be kept confidential to ensure that such information and data is to be used and retained within the company, and that all Leisure's Trade Secrets were sole and exclusive property of All Leisure.

15.     On April 1, 2012, DMS, by and through its Vice President, Susan Lee, entered into a Non-Disclosure Agreement with DMS.  A copy of the Non-Disclosure Agreement is attached as **Exhibit A**.

16.     Pursuant to the Non-Disclosure Agreement, All Leisure furnished DMS with All Leisure's Trade Secrets.   DMS acknowledged and agreed that all such information and data is and shall remain the property of All Leisure.

17.     The Non-Disclosure Agreement prohibits DMS from disclosing or communicating All Leisure's confidential and proprietary information to any third party.

18.     In or about October 2012, Novello had made an unannounced decision to leave

All Leisure.  DMS, however, knew that Novello was leaving All Leisure.

19.     Having decided to leave the company, and without the knowledge of All Leisure, on October 14, 2012 at 9:33 a.m., Novello sent an email to Lee, the Vice President of DMS, stating:

> Can you provide me with a data dump across all offices of all bookings, including cruise revenue, names of pax [passengers], address info, names of agent if any, including address info, booking dates, cruise name, locations, birthdates, emails, that we have in nvs…the raw data will be fine.

A copy of this email is attached as **Exhibit B**.

20.     A data dump, also known as a database dump, is the transfer of a large amount of data from one system or location to another.

21.     Novello's data dump request included data comprising all Leisure's Trade Secrets.

22.     Novello's request that DMS transfer All Leisure's Trade Secrets to him personally was for his own use and benefit and probable use in competition against All Leisure after he left the company.

23.     On October 14, 2012 at 10:52 a.m., Lee sent an email to Novello, which stated:

> Yes.  I will pull it today.  It's going to be a large file so if I can't zip it and email it to you, I'll put it in a CD and give it to you on Tuesday.  Or do you need it before that?

A copy of this email is attached as **Exhibit C**.

24.     On October 16, 2012 at 6:05 p.m., Novello sent an email to Lee, stating: "Can you zip me the information I requested, as I assume you forgot to give me a CD with it."  A copy of this email is included in **Composite Exhibit D**.

25.     On October 16, 2012 at 6:20 p.m., Lee sent an email to Novello, stating: "Yes, I have it and did forget to burn the CD.  I'm going to try and send it to you via YouSendit now."

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

A copy of this email is included in Composite Exhibit D.

26.     YouSendit is a digital file delivery company that lets users send, receive and track files on demand, including the ability to share folders and sign documents.  The sender can enter the recipients' e-mail addresses, attach the file and send it; the recipients receive an email notification with a Uniform Resource Locator ("URL") that allows them download the file.

27.     On October 16, 2012 at 6:27 p.m., Novello sent an email to Lee, stating: "If you cannot, just drop it in the mail to 9407 Bridgebrook Drive, Boca Raton, FL 33496 as I may [sic] from home some days next week."  A copy of this email is included in Composite Exhibit D.

28.     On October 16, 2012 at 6:48 p.m., Lee sent an email to Novello, stating in pertinent part: "It's sending via YouSendit now.  Should be receiving it shortly."  A copy of this email is included in Composite Exhibit D.

29.     On October 16, 2012 at 6:50 p.m., YouSendit sent an email to Lee delivering the data files requested by Novello.  The link to All Leisure's data files was then sent to Novello so he could access and download All Leisure's data.  A copy of this email is included in Composite Exhibit D.

30.     On October 16, 2012 at 6:52 p.m., Novello sent an email to Lee, stating in pertinent part: "When I do leave, they are screwed because no one will do what I did."  A copy of this email is included in Composite Exhibit D.

31.     On October 17, 2012 at 7:01 p.m., Lee sent an email to Novello, stating in pertinent part: "I have no doubt that they will be screwed when you're gone."  A copy of this email is included in Composite Exhibit D.

32.     On October 24, 2012 at 2:47 p.m. Novello sent an email to Lee, stating: "Any chance I can get this ??"  Novello was referring to the "data dump" of All Leisure's proprietary and confidential information and data, which he previously requested from Lee.  A copy of this

email is included in Composite Exhibit D.

33.    On October 24, 2012 at 2:54 p.m., Lee sent an email to Novello, stating: "I sent it to you, remember?  You got a file from YouSendit?"  A copy of this email is included in Composite Exhibit D.

34.    On October 24, 2012 at 3:09 p.m., Lee sent an email to Novello, stating: "Can you check your email from last Tuesday [October 16, 2012] at 6:50pm?  You should also be able to click on the link below."  A copy of this email is included in Composite Exhibit D.

35.    On October 24, 2012 at 3:19 p.m., Novello sent an email to Lee, stating: "I'm uploading now…."  A copy of this email is included in Composite Exhibit D.

36.    The data files transmitted to Novello by DMS are All Leisure's Trade Secrets.

37.    On October 25, 2012, All Leisure terminated Novello's employment.

38.    The day his employment was terminated, Novello acknowledged that All Leisure maintained confidential and proprietary information and there could be implications if an employee took such information.

39.    All Leisure first discovered Novello's and DMS' wrongful acts on November 15, 2012, after a search of his company email.

40.    All conditions precedent to the filing of this action have been met, satisfied, performed or occurred.

41.    All Leisure has retained undersigned counsel to represent it and is obligated to pay counsel reasonable legal fees, including attorneys' fees, and costs incurred in this action.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
### (INJUNCTIVE RELIEF AND DAMAGES)
### (AGAINST NOVELLO AND DMS)

42.    This is an action pursuant to the Florida Uniform Trade Secrets Act, Chapter 688 of the Florida Statutes, for temporary and permanent injunctive relief and damages based upon

BERGER SINGERMAN
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

Novello's and DMS' misappropriation of All Leisure's Trade Secrets.

43.     All Leisure incorporates the allegations of paragraphs 1 through 41 above, as if fully set forth herein.

44.     During the course of his employment with All Leisure, Novello had access to and knowledge of All Leisure's Trade Secrets.

45.     Pursuant to the Non-Disclosure Agreement, All Leisure furnished DMS with All Leisure's Trade Secrets.   DMS acknowledged and agreed that all such information and data is and shall remain the property of All Leisure.

46.     Novello and DMS, through improper means, specifically theft and breach of a duty to maintain the secrecy of the All Leisure's Trade Secrets, misappropriated or there is a high degree of probability of inevitable and immediate misappropriation of All Leisure's Trade Secrets.  Novello has disclosed or used or is likely to disclose or use All Leisure's Trade Secrets without the express or implied consent of All Leisure.  In addition, DMS still possesses All Leisure's Trade Secrets and has improperly disclosed such information and data to Novello or used or is likely to disclose or use All Leisure's Trade Secrets for the benefit of itself and others.

47.     All Leisure will be irreparably harmed if Novello and DMS are permitted to misappropriate or continue to misappropriate All Leisure's Trade Secrets.

48.     All Leisure has no adequate remedy at law to stop Novello's and DMS' misappropriation or probable misappropriation of All Leisure's Trade Secrets.

49.     Injunctive relief is in the public interest because trade secret law serves to protect standards of commercial morality and encourage invention and innovation while maintaining the public interest in having free and open competition in the manufacture and sale of goods.

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

50.     In addition to being irreparably harmed as a result of Novello's and DMS' misappropriation of All Leisure's Trade Secrets, as a direct and proximate result of their misappropriation of trade secrets, All Leisure has suffered damages.

WHEREFORE, Plaintiff, ALL LEISURE HOLIDAYS LIMITED, demands entry of a temporary injunction, thereafter to be made permanent, in accordance with Florida Statutes §688.003, enjoining Defendants, STEVEN NOVELLO and DATABASE MARKETING SOLUTIONS, INC., their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with Novello, DMS or their officers, agents, servants, employees, and attorneys, from any misappropriation or further misappropriation of the proprietary and valuable information and trade secrets of All Leisure; enjoining them from using, copying, reproducing, disseminating, distributing, and disclosing the proprietary and valuable information and trade secrets of All Leisure and all other documents, data and information that they created using the proprietary and valuable information and trade secrets of All Leisure; requiring them to return all proprietary and valuable information and trade secrets of All Leisure and all other documents, data and information that they created using the proprietary and valuable information and trade secrets of All Leisure; awarding All Leisure damages and exemplary damages in accordance with Florida Statutes §688.004; awarding all Leisure attorneys' fees pursuant to Florida Statutes §688.004; awarding All Leisure court costs; and ordering such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY
### (DAMAGES)
### (AGAINST NOVELLO)

51.     This is an action against Novello for breach of fiduciary duty.

52.     All Leisure incorporates the allegations of paragraphs 1 through 41 above, as if fully set forth herein.

53.     As the President of All Leisure, Novello was a fiduciary to All Leisure.

54.     As a fiduciary, Novello owed the duties of loyalty and care to All Leisure.

55.     The duty of loyalty required Mr. Novello to act solely in the best interests of All Leisure, rather than in his own interests.

56.     The duty of care required Novello to discharge his duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner he reasonably believes to be in the best interests of All Leisure.

57.     Novello breached the duties of loyalty and care by misappropriating, using and failing to return All Leisure's Trade Secrets.  Novello's actions were not in the best interests of All Leisure.

58.     As a direct and proximate result of Novello's breach of fiduciary duty, All Leisure has suffered damages.

WHEREFORE, Plaintiff, ALL LEISURE HOLIDAYS LIMITED, demands entry of a judgment against Defendant, STEVEN NOVELLO, for damages, court costs, and such other and further relief as the Court deems just and proper.

## COUNT III– BREACH OF CONTRACT
### (DAMAGES)
### (AGAINST DMS)

59.     This is an action against DMS for breach of contract.

60.     All Leisure incorporates the allegations of paragraphs 1 through 41 above, as if fully set forth herein.

61.     DMS materially breached the Non-Disclosure Agreement by failing to hold in confidence All Leisure's Trade Secrets and disclosing and communicating All Leisure's Trade Secrets to Novello after it knew that he intended to leave the employ of All Leisure.

62.     As a direct result of DMS' breach of contract, All Leisure has suffered damages.

**WHEREFORE**, Plaintiff, ALL LEISURE HOLIDAYS LIMITED, demands entry of judgment against Defendant, DATABASE MARKETING SOLUTIONS, for damages, interest, and such other and further relief as the Court deems just and proper.

Dated:  November 27, 2012

By:   s/Leonard K. Samuels
Leonard K. Samuels
Florida Bar No. 501610
LSamuels@bergersingerman.com
Jeffrey S. Wertman
Florida Bar No. 003093
JWertman@bergersingerman.com
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, 10th Floor
Fort Lauderdale, Florida 33301
Telephone:  (954) 525-9900
Facsimile:  (954) 523-2872

*Attorneys for Plaintiff, All Leisure Holidays Limited*

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I, Neil Morris, am the Chief Operating Officer of All Leisure Group PLC, the parent company of Plaintiff, All Leisure Holidays Limited.

I have read the foregoing Verified Complaint and I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 27th day of November 2012.

By:  Neil Morris

4668587-1