NOV 27 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA – FT. LAUD.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

| | |
|---|---|
| ALL LEISURE HOLIDAYS LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN NOVELLO, and DATABASE | ) |
| MARKETING SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S EMERGENCY *EX PARTE* MOTION**
**FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, ALL LEISURE HOLIDAYS LIMITED, INC. ("All Leisure"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, respectfully request the issuance of an *ex parte* temporary restraining order against Defendants, STEVEN NOVELLO ("Novello"), and DATABASE MARKETING SOLUTIONS, INC. ("DMS"), to enjoin them from misappropriating All Leisure's Trade Secrets, as defined and further alleged in Plaintiff's Verified Complaint for Injunctive Relief and for Damages.

A proposed Order Granting Plaintiff's Emergency *Ex Parte* Motion for Temporary Injunction is attached hereto as **Exhibit A**.

Absent immediate injunctive relief, All Leisure will suffer irreparable harm. As alleged in Plaintiff's Verified Complaint for Injunctive Relief and for Damages, Novello, the former President of All Leisure, has disclosed or used or is likely to disclose or use All Leisure's Trade Secrets without the express or implied consent of All Leisure. In addition, DMS still possesses

All Leisure's Trade Secrets and has improperly disclosed such information and data to Novello or used or is likely to disclose or use All Leisure's Trade Secrets for the benefit of itself and others. Moreover, as set forth in the Memorandum of Law in Support of Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order, inadequate remedy at law is presumed when trade secrets have been misappropriated.

For the reasons stated in the accompanying Memorandum of Law and Plaintiff's Verified Complaint for Injunctive Relief and for Damages, Plaintiffs' Motion should be granted.

Dated this 27th day of November, 2012.

By: _____

Leonard K. Samuels
Florida Bar No. 501610
LSamuels@bergersingerman.com
Jeffrey S. Wertman
Florida Bar No. 003093
JWertman@bergersingerman.com
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, 10th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872

*Attorneys for Plaintiff, All Leisure Holidays Limited, Inc.*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-62328

| | |
|---|---|
| ALL LEISURE HOLIDAYS LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN NOVELLO, and DATABASE | ) |
| MARKETING SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |
| ———————————————— | ) |

## ORDER GRANTING PLAINTIFF'S EMERGENCY
## *EX PARTE* MOTION FOR TEMPORARY INJUNCTION

**THIS CAUSE** is before the Court on Plaintiff's Emergency *Ex Parte* Motion for

Temporary Restraining Order ("Motion").   Plaintiff, ALL LEISURE HOLIDAYS

LIMITED, INC., has also filed a Verified Complaint for Injunctive Relief and for Damages

("Verified Complaint"), a Memorandum of Law in support of the Motion, and a Certificate

Pursuant to Rule 65(b) of the Florida Rules of Civil Procedure.

In the Motion and Verified Complaint, Plaintiff requests entry of a temporary

restraining order enjoining Defendants, STEVEN NOVELLO ("Novello"), and DATABASE

MARKETING SOLUTIONS, INC. ("DMS"), from any misappropriation or further

misappropriation of All Leisure's Trade Secrets, as defined in the Verified Complaint, requiring

Novello and DMS to return all of All Leisure's Trade Secrets, and for other injunctive relief.

Having carefully reviewed the Verified Complaint, Motion, Memorandum of Law in

support of the Motion, and Certificate Pursuant to Rule 65(b) of the Florida Rules of Civil

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

Procedure, I grant the Motion without notice.

The Verified Complaint alleges the following facts:

Plaintiff, All Leisure, is also known as "All Leisure Holidays Limited Inc.", "All Discovery Cruising", and "All Discovery Cruising North America." (Verified Complaint, ¶1.) All Leisure is in the business of selling, marketing and operating cruise ships throughout the world. All Leisure operates the cruise brands Hebridean Island Cruises, Swan Hellenic, and Voyages of Discovery. (*Id.*) All Leisure is part of All Leisure Group PLC, its parent company, which is the largest British owned cruise ship company in the world. (*Id.*)

All Leisure has expended considerable money and time developing and maintain proprietary and valuable information, including, but not limited to, business and corporate strategies, business plans, product strategies, product cost and pricing information, customer lists and information, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial information, contracts, agreements, computer programs, technical processes, manuals, and other information pertaining to the financial condition, business affairs or business prospects of All Leisure. This information (hereinafter referred to as "All Leisure's Trade Secrets") is the life blood of All Leisure's business. Dissemination and use of All Leisure's Trade Secrets to and by competitors would allow them to compete better with All Leisure and significantly impact All Leisure's business operations. (Verified Complaint, ¶8.)

One of All Leisure's most important assets is its customer list and customer information. If this list and information became public or be utilized by All Leisure's competitors, All Leisure would lose both the trust of its customers and the ability to fairly and effectively compete in the

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

marketplace. (Verified Complaint, ¶9.)

All Leisure's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons outside of All Leisure who can obtain economic value from its disclosure or use; and are subject to efforts that are reasonable under the circumstances to maintain the secrecy of the information. (Verified Complaint, ¶10.)

All Leisure took precautionary measures to protect All Leisure's Trade Secrets, including, but not limited to, instituting a data protection policy, which governed employees' access to All Leisure's Trade Secrets, required the use and updating of passwords, and set forth requirements for storage and physical security (desks, doors, visitors, laptops and storage devices) of such information and data. (Verified Complaint, ¶11.)

Novello joined All Leisure on May 11, 2010 as President.  As President, Novello was responsible for the operation of the company throughout North America. (Verified Complaint, ¶12.)

During his more than two-year tenure with All Leisure, Novello came to know and was entrusted with All Leisure's Trade Secrets. (Verified Complaint, ¶13.)

Prior to and during his employment, Novello was advised and aware of All Leisure's data protection policy, that All Leisure's Trade Secrets were to be kept confidential to ensure that such information and data is to be used and retained within the company, and that all Leisure's Trade Secrets were sole and exclusive property of All Leisure. (Verified Complaint, ¶14.)

On April 1, 2012, DMS, a database marketing and consulting firm, which develops marketing campaigns to generate leads, target prospects and increase revenue, by and through its

4666305-1                                        - 3 -

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

Vice President, Susan Lee, entered into a Non-Disclosure Agreement with DMS.  (Verified Complaint, ¶15; Exhibit A to Verified Complaint.)

Pursuant to the Non-Disclosure Agreement, All Leisure furnished DMS with All Leisure's Trade Secrets.  DMS acknowledged and agreed that all such information and data is and shall remain the property of All Leisure.  (Verified Complaint, ¶16; Exhibit A to Verified Complaint.)

The Non-Disclosure Agreement prohibits DMS from disclosing or communicating All Leisure's confidential and proprietary information to any third party.  (Verified Complaint, ¶17; Exhibit A to Verified Complaint.)

In or about October 2012, Novello had made an unannounced decision to leave All Leisure.  DMS, however, knew that Novello was leaving All Leisure.  (Verified Complaint, ¶18.)

Having decided to leave the company, and without the knowledge of All Leisure, on October 14, 2012 at 9:33 a.m., Novello sent an email to Lee, the Vice President of DMS, stating:

> Can you provide me with a data dump across all offices of all bookings, including cruise revenue, names of pax [passengers], address info, names of agent if any, including address info, booking dates, cruise name, locations, birthdates, emails, that we have in nvs...the raw data will be fine.

(Verified Complaint, ¶19; Exhibit B to Verified Complaint.)

A data dump, also known as a database dump, is the transfer of a large amount of data from one system or location to another.  (Verified Complaint, ¶20.)

Novello's data dump request included data comprising all Leisure's Trade Secrets.  (Verified Complaint, ¶21.)

Novello's request that DMS transfer All Leisure's Trade Secrets to him personally was for his own use and benefit and probable use in competition against All Leisure after he left the

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

company. (Verified Complaint, ¶22.)

On October 14, 2012 at 10:52 a.m., Lee sent an email to Novello, which stated:

Yes. I will pull it today. It's going to be a large file so if I can't zip it and email it to you, I'll put it in a CD and give it to you on Tuesday. Or do you need it before that?

(Verified Complaint, ¶23; Exhibit C to Verified Complaint.)

On October 16, 2012 at 6:05 p.m., Novello sent an email to Lee, stating: "Can you zip me the information I requested, as I assume you forgot to give me a CD with it." (Verified Complaint, ¶24; Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:20 p.m., Lee sent an email to Novello, stating: "Yes, I have it and did forget to burn the CD. I'm going to try and send it to you via YouSendit now." (Verified Complaint, ¶25; Composite Exhibit D to Verified Complaint.)

YouSendit is a digital file delivery company that lets users send, receive and track files on demand, including the ability to share folders and sign documents. The sender can enter the recipients' e-mail addresses, attach the file and send it; the recipients receive an email notification with a Uniform Resource Locator ("URL") that allows them download the file. (Verified Complaint, ¶26.)

On October 16, 2012 at 6:27 p.m., Novello sent an email to Lee, stating: "If you cannot, just drop it in the mail to 9407 Bridgebrook Drive, Boca Raton, FL 33496 as I may [sic] from home some days next week." (Verified Complaint, ¶27; Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:48 p.m., Lee sent an email to Novello, stating in pertinent part: "It's sending via YouSendit now. Should be receiving it shortly." (Verified Complaint, ¶28;

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:50 p.m., YouSendit sent an email to Lee delivering the data files requested by Novello. The link to All Leisure's data files was then sent to Novello so he could access and download All Leisure's data. (Verified Complaint, ¶29; Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:52 p.m., Novello sent an email to Lee, stating in pertinent part: "When I do leave, they are screwed because no one will do what I did." (Verified Complaint, ¶30; Composite Exhibit D to Verified Complaint.)

On October 17, 2012 at 7:01 p.m., Lee sent an email to Novello, stating in pertinent part: "I have no doubt that they will be screwed when you're gone." (Verified Complaint, ¶31; Composite Exhibit D to Verified Complaint.)

On October 24, 2012 at 2:47 p.m. Novello sent an email to Lee, stating: "Any chance I can get this ??" Novello was referring to the "data dump" of All Leisure's proprietary and confidential information and data, which he previously requested from Lee. (Verified Complaint, ¶32; Composite Exhibit D to Verified Complaint.)

On October 24, 2012 at 2:54 p.m., Lee sent an email to Novello, stating: "I sent it to you, remember? You got a file from YouSendit?" (Verified Complaint, ¶33; Composite Exhibit D to Verified Complaint.)

On October 24, 2012 at 3:09 p.m., Lee sent an email to Novello, stating: "Can you check your email from last Tuesday [October 16, 2012] at 6:50pm? You should also be able to click on the link below." (Verified Complaint, ¶34; Composite Exhibit D to Verified Complaint.)

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

On October 24, 2012 at 3:19 p.m., Novello sent an email to Lee, stating: "I'm uploading now...." (Verified Complaint, ¶35; Composite Exhibit D to Verified Complaint.)

The data files transmitted to Novello by DMS are All Leisure's Trade Secrets. (Verified Complaint, ¶36.)

On October 25, 2012, All Leisure terminated Novello's employment. (Verified Complaint, ¶37.)

The day his employment was terminated, Novello acknowledged that All Leisure maintained confidential and proprietary information and there could be implications if an employee took such information. (Verified Complaint, ¶38.)

All Leisure first discovered Novello's and DMS' wrongful acts on November 15, 2012, after a search of his company email. (Verified Complaint, ¶39.)

Novello and DMS, through improper means, specifically theft and breach of a duty to maintain the secrecy of the All Leisure's Trade Secrets, misappropriated or there is a high degree of probability of inevitable and immediate misappropriation of All Leisure's Trade Secrets. Novello has disclosed or used or is likely to disclose or use All Leisure's Trade Secrets without the express or implied consent of All Leisure. DMS still possesses All Leisure's Trade Secrets and has improperly disclosed such information and data to Novello or used or is likely to disclose or use All Leisure's Trade Secrets for the benefit of itself and others. (Verified Complaint, ¶46.)

The Uniform Trade Secrets Act, Fla. Stat. §§ 688.001, et seq., permits injunctive relief to redress any actual or threatened misappropriation of trade secrets. The elements of the claim are that: (1) the plaintiff possessed secret information and took reasonable steps to protect its

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

secrecy, and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing Fla. Stat. § 688.002).

Trade secrets are broadly defined under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, et. seq. All Leisure's business and corporate strategies, business plans, product strategies, product cost and pricing information, customer lists and information, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial information, contracts, agreements, computer programs, technical processes, manuals, and other information pertaining to the financial condition, business affairs or business prospects of All Leisure, easily qualify for protection as trade secrets. Fla. Stat. § 688.002(4).

Florida law considers a business's customer lists and the information contained therein to be trade secrets subject to protection. *Marine Turbo Engineering, Ltd. v. Turbocharger Servs. Worldwide, LLC*, 2011 WL 6754058, at *9 (S.D. Fla. Dec. 22, 2011); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F.Supp.2d 1346, 1351 (M.D. Fla. 2002) (citing cases in all three Florida federal districts, holding that the plaintiffs customer lists and the information on those lists constituted trade secrets under Florida law, and granting a preliminary injunction enjoining the defendants from, *inter alia*, soliciting the clients on the list at issue notwithstanding the fact that the former employee-defendant had not signed an employment agreement containing non-disclosure/confidentiality and non-solicitation provisions); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1557 (S.D. Fla. 1992) ("Regardless of who compiled

the customer list, however, it is clearly protected under *Hapney* [*v. Central Garage, Inc.*, 579 So. 2d 127 (Fla. 2d DCA 1991).]  The Hapney court's ultimate holding was that 'trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests subject to protection[.]"), *aff'd,* 2 F.3d 405 (11th Cir. 1993); *Kavanaugh v. Stump*, 592 So. 2d 1231, 1231 (Fla. 5th DCA 1992) ("Customer lists can constitute trade secrets where the lists are acquired or compiled through the industry of the owner of the lists and are not just a compilation of information commonly available to the public."); *East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001) (finding customer list to be a trade secret); *Unistar Corp. v. Child*, 415 So. 2d 733, 734 (Fla. 3d DCA 1982) (finding customer list to be a trade secret where list was "distillation of a larger list of financial planners, reflecting considerable effort, knowledge, time and expense on the part of the plaintiff); *Fortune Personnel Agency of Ft. Lauderdale, Inc. v. Sun Tech Inc. of South Florida*, 423 So. 2d 545, 545 (Fla. 4th DCA 1982) (recognizing customer lists as a protectable trade secret).

"The law imposes upon every employee a duty not to use the employer's trade secrets for his own benefit, if the secret was acquired by the employee in the course of his employment. *Unistar Corp. v. Child*, 415 So. 2d 733, 734 (Fla. 3d DCA 1984).  Misappropriation, pursuant to Fla. Stat. § 688.002(2), is a forgone conclusion where a trusted employee discloses trade secrets after receiving them under circumstances of obvious confidentiality and contractual obligations. *Concept, Inc. v. Thermotemp, Inc.*, 553 So. 2d 1325 (Fla. 2d DCA 1989).  Moreover, as to any trade secrets that may not yet have been disclosed, Fla. Stat. § 688.003 specifically provides for injunctive relief against actual and threatened misappropriation. *See also Alloy Fasteners*, 664 So.2d at 59." *Stoneworks, Inc., v. Empire Marble and Granite, Inc.*, 1998 WL 998962, at *4

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

(S.D. Fla. Nov. 20, 1998):

The fact that an employee did not sign a non-disclosure/confidentiality agreement is not dispositive.  Florida law imposes upon every employee a duty not to use the employer's trade secrets for his own benefit, if the secret was acquired by the employee in the course of his employment.  *Unistar*, 415 So. 2d at 734; *Dunn*, 191 F.Supp.2d at 1350-51 (M.D. Fla. 2002) (quoting *Unistar*).

The verified facts also establish that having decided to leave the employ of All Leisure, and without the knowledge of All Leisure, Novello aided and assisted by DMS, requested and obtained All Leisure's Trade Secrets without the express or implied consent of All Leisure.  For all these reasons, there is a substantial likelihood that All Leisure will prevail on this claim.

Novello is privy to All Leisure's Trade Secrets, all of which may be used for his benefit or the benefit of a competing company and to the detriment of All Leisure.  All Leisure's Trade Secrets were developed over an extended period of time by and at great expense of All Leisure, and the dissemination of this confidential and proprietary information to All Leisure's competitors will provide them with a tangible advantage in their efforts to compete with All Leisure.

"[T]he loss of customers and goodwill is an irreparable injury." (internal quotations, citations omitted).  *Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991).  *See also Marine Turbo Eng'g, Ltd.*, 2011 WL 6754058, at *10 (finding that injuries stemming from stolen trade secrets are "not easily quantifiable in monetary terms"); *Hatfield v. AutoNation, Inc.*, 939 So. 2d 155, 157 (Fla. 4th DCA 2006) ("[A]n injury is irreparable where the damage is estimable only by conjecture, and not by any accurate standard." (quoting *JonJuan Salon, Inc. v.*

*Acosta*, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006)); *I.C. Sys., Inc.*, 824 So. 2d at 287 (characterizing damages as irreparable where use of trade secrets and customer lists were at stake).

Moreover, inadequate remedy at law is presumed when trade secrets have been misappropriated. As the Court stated in *Dotolo v. Schouten*, 426 So. 2d 1013, 1015 (Fla. 2d DCA 1983) (holding plaintiffs were entitled to temporary injunction);

> The appellants contend that injunctive relief is the only complete and adequate remedy to stop the appellees' continuing misappropriation of their secret formula. We agree. They argue that irreparable harm and inadequate remedy at law should be presumed in an action for injunctive relief with respect to the misappropriation of a trade secret. We agree.

*See also Unistar*, 415 So. 2d 733 (irreparable harm is to be presumed upon theft of trade secrets). Novello stole All Leisure's Trade Secrets. Injunctive relief is the only appropriate relied to prohibit Novello and DMS from continuing misappropriation and unauthorized use and disclosure of All Leisure's Trade Secrets.

Florida law clearly recognizes that protecting trade secrets furthers the public interest. *East v. Aqua Gaming, Inc.,* 805 So. 2d 932, 934 (Fla. 2d DCA 2001) ("Finally, as to the fourth prong, it is apparent that an injunction prohibiting a former employee from using trade secrets to solicit existing customers clearly does not disserve the public interest of protecting legitimate business interests."); *Lynch v. Silcox*, 2001 WL 1200656, *6 (S.D. Fla. 2001) ("Issuance of a preliminary injunction will promote the public interest in: (i) protection of trade secret client lists and other confidential and trade secrets information and (ii) enforcement of reasonable contracts."); *see also, Dotolo*, 426 So. 2d at 1015 (holding plaintiffs were entitled to temporary injunction in light of tortuous interference and trade secrets violation).

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

I conclude, having reviewed the filings of the Plaintiff, that Plaintiff has set forth sufficient grounds to meet the requirements for a Temporary Restraining Order. The four factors that courts consider in determining whether to grant a temporary restraining order are the same as those for a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *Schiavo v. Schiavo,* 403 F.3d 1223, 1225-26 (11th Cir. 2005). I find that Plaintiff has met is burden at this stage as to each of the four requirements and a temporary restraining order should be entered.

Pursuant to Fed. R. Civ. P. 65(b)(2), "Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record."

Here, Plaintiff has sufficiently alleged irreparable harm. Specifically, absent a Temporary Restraining Order, Plaintiff will suffer irreparable harm because, as alleged in the Verified Complaint, Novello is privy to All Leisure's Trade Secrets, all of which may be used for his benefit or the benefit of a competing company and to the detriment of All Leisure. All Leisure's Trade Secrets were developed over an extended period of time by and at great expense of All Leisure, and the dissemination of this confidential and proprietary information to All Leisure's competitors will provide them with a tangible advantage in their efforts to compete with All Leisure. In addition, DMS still possesses All Leisure's Trade Secrets and has improperly disclosed such information and data to Novello or used or is likely to disclose or use All

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

Leisure's Trade Secrets for the benefit of itself and others. Moreover, as set forth in the Memorandum of Law in Support of Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order, inadequate remedy at law is presumed when trade secrets have been misappropriated.

Plaintiff has set out sufficient grounds to suggest if Defendants are given notice of Plaintiff's *Ex Parte* Emergency Motion for Temporary Restraining Order, there will be a further dissemination and improper use of All Leisure Trade Secrets and that notice to the Defendants may cause Defendants to attempt to delete electronic evidence of their misappropriation. Accordingly, the temporary restraining order is issued without notice, and I enter a Temporary Restraining Order as explained below.

It is hereby **ORDERED AND ADJUDGED** that:

1.     Plaintiff's Emergency *Ex Parte* Motion for Temporary Restraining Order is hereby **GRANTED**.

2.     Defendants, STEVEN NOVELLO and DATABASE MARKETING SOLUTIONS, INC., are hereby temporarily restrained from using, copying, reproducing, disseminating, distributing, and disclosing all proprietary information and trade secrets of All Leisure, including, but not limited to, customer lists and information, documents and data regarding cruise revenue, names, addresses and contact information of passengers, names, addresses and  of agents, including addresses and contact information, booking dates, cruise names, locations, birth dates, emails, business and corporate strategies, business plans, product strategies, product cost and pricing information, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

information, contracts, agreements, computer programs, technical processes, manuals, information pertaining to the financial condition, business affairs or business prospects of All Leisure, and all other documents, data and information that they created using the proprietary information and trade secrets of All Leisure.

      3.    Within forty-eight (48) hours of receiving notice of this Order, Defendants, STEVEN NOVELLO and DATABASE MARKETING SOLUTIONS, INC., are hereby required to return all proprietary information and trade secrets of All Leisure, including, but not limited to, customer lists and information, documents and data regarding cruise revenue, names, addresses and contact information of passengers, names, addresses and  of agents, including addresses and contact information, booking dates, cruise names, locations, birth dates, emails, business and corporate strategies, business plans, product strategies, product cost and pricing information, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial information, contracts, agreements, computer programs, technical processes, manuals, information pertaining to the financial condition, business affairs or business prospects of All Leisure (and all copies thereof), and all other documents, data and information that they created using the proprietary information and trade secrets of All Leisure (and all copies thereof), in their possession, custody or control, in all forms, including, but not limited to, tangible and electronic form.

      4.    Pursuant to Fed. R. Civ. P. 65(d), this Order is binding on the following who receive actual notice of the Order by personal service or otherwise: Defendants, STEVEN NOVELLO and DATABASE MARKETING SOLUTIONS, INC.; their officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation

Case No. 12-cv-62328
Order Granting Plaintiff's Emergency
*Ex Parte* Motion for Temporary Restraining Order

with Defendants, STEVEN NOVELLO and DATABASE MARKETING SOLUTIONS, INC., or their officers, agents, servants, employees, and attorneys.

5.     This Temporary Restraining Order shall remain in effect for ten (10) days from the date of this Order, until _____, 2012, unless further extended by the Court.

6.     Under Fed. R. Civ. P. 65(c), Plaintiff shall post a bond in the amount of $_____ with the Clerk of the Court, conditioned upon payment of costs and damages sustained by the enjoined Defendants if such Defendants are wrongfully enjoined therefrom. The provisions of this Order shall not become effective until Plaintiff posts such bond.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, at _____ o'clock [a.m./ p.m.], this _____ day of _____, 2012.

_____
UNITED STATES DISTRICT JUDGE