FILED by \_\_\_\_ D.C.

NOV 27 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

| | |
|---|---|
| ALL LEISURE HOLIDAYS LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN NOVELLO, and DATABASE MARKETING SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY**
***EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, ALL LEISURE HOLIDAYS LIMITED, INC. ("All Leisure"), respectfully submits its Memorandum of Law in Support of Emergency *Ex Parte* Motion for Temporary Restraining Order.

## INTRODUCTION

Contemporaneously with the filing of this Memorandum of Law, All Leisure filed a Verified Complaint for Temporary and Permanent Injunction and for Damages. The Verified Complaint seeks, *inter alia*, temporary and injunctive relief against Defendants, STEVEN NOVELLO ("Novello') and DATABASE MARKETING SOLUTIONS, INC. ("DMS"), as a result of their misappropriation of All Leisure's Trade Secrets.

## AN *EX PARTE* TRO IS WARRANTED

*Ex parte* relief is warranted because All Leisure will face immediate and irreparable harm if the Court issues a temporary restraining order ("TRO") with notice to the adverse parties.

As alleged in Plaintiff's Verified Complaint for Injunctive Relief and for Damages, Novello, the former President of All Leisure, has disclosed or used or is likely to disclose or use All Leisure's Trade Secrets without the express or implied consent of All Leisure. DMS still possesses All Leisure's Trade Secrets and has improperly disclosed such information and data to Novello or used or is likely to disclose or use All Leisure's Trade Secrets for the benefit of itself and others.

Given the surreptitious manner in which Novello and DMS coordinated and conspired with respect to All Leisure's Trade Secrets, as evidenced by the emails between them (which are referenced in the Verified Complaint), Plaintiff has grave concerns that if Defendants are given notice of Plaintiff's Ex Parte Emergency Motion for Temporary Restraining Order, there will be a further dissemination and improper use of All Leisure Trade Secrets and that notice to the Defendants may cause Defendants to attempt to delete electronic evidence of their misappropriation.

"The ex parte temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all. 11 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2951 at 500-501 (1973) (quoting *Developments in the Law-Injunctions,* 78 Harv. L. Rev. 994, 1060 (1965)).

## STATEMENT OF FACTS

Plaintiff, All Leisure, is also known as "All Leisure Holidays Limited Inc.", "All Discovery Cruising", and "All Discovery Cruising North America." (Verified Complaint, ¶1.)

All Leisure is in the business of selling, marketing and operating cruise ships throughout the world. All Leisure operates the cruise brands Hebridean Island Cruises, Swan Hellenic, and Voyages of Discovery. (*Id.*) All Leisure is part of All Leisure Group PLC, its parent company, which is the largest British owned cruise ship company in the world. (*Id.*)

All Leisure has expended considerable money and time developing and maintain proprietary and valuable information, including, but not limited to, business and corporate strategies, business plans, product strategies, product cost and pricing information, customer lists and information, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial information, contracts, agreements, computer programs, technical processes, manuals, and other information pertaining to the financial condition, business affairs or business prospects of All Leisure. This information (hereinafter referred to as "All Leisure's Trade Secrets") is the life blood of All Leisure's business. Dissemination and use of All Leisure's Trade Secrets to and by competitors would allow them to compete better with All Leisure and significantly impact All Leisure's business operations. (Verified Complaint, ¶8.)

One of All Leisure's most important assets is its customer list and customer information. If this list and information became public or be utilized by All Leisure's competitors, All Leisure would lose both the trust of its customers and the ability to fairly and effectively compete in the marketplace. (Verified Complaint, ¶9.)

All Leisure's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons outside of All Leisure who can obtain economic value from its disclosure or use; and are subject to efforts that are reasonable under the circumstances to maintain the secrecy of the information. (Verified Complaint, ¶10.)

All Leisure took precautionary measures to protect All Leisure's Trade Secrets, including, but not limited to, instituting a data protection policy, which governed employees' access to All Leisure's Trade Secrets, required the use and updating of passwords, and set forth requirements for storage and physical security (desks, doors, visitors, laptops and storage devices) of such information and data. (Verified Complaint, ¶11.)

Novello joined All Leisure on May 11, 2010 as President. As President, Novello was responsible for the operation of the company throughout North America. (Verified Complaint, ¶12.)

During his more than two-year tenure with All Leisure, Novello came to know and was entrusted with All Leisure's Trade Secrets. (Verified Complaint, ¶13.)

Prior to and during his employment, Novello was advised and aware of All Leisure's data protection policy, that All Leisure's Trade Secrets were to be kept confidential to ensure that such information and data is to be used and retained within the company, and that all Leisure's Trade Secrets were sole and exclusive property of All Leisure. (Verified Complaint, ¶14.)

On April 1, 2012, DMS, a database marketing and consulting firm, which develops marketing campaigns to generate leads, target prospects and increase revenue, by and through its Vice President, Susan Lee, entered into a Non-Disclosure Agreement with DMS. (Verified Complaint, ¶15; Exhibit A to Verified Complaint.)

Pursuant to the Non-Disclosure Agreement, All Leisure furnished DMS with All Leisure's Trade Secrets. DMS acknowledged and agreed that all such information and data is and shall remain the property of All Leisure. (Verified Complaint, ¶16; Exhibit A to Verified Complaint.)

The Non-Disclosure Agreement prohibits DMS from disclosing or communicating All Leisure's confidential and proprietary information to any third party. (Verified Complaint, ¶17;

Exhibit A to Verified Complaint.)

In or about October 2012, Novello had made an unannounced decision to leave All Leisure. DMS, however, knew that Novello was leaving All Leisure. (Verified Complaint, ¶18.)

Having decided to leave the company, and without the knowledge of All Leisure, on October 14, 2012 at 9:33 a.m., Novello sent an email to Lee, the Vice President of DMS, stating:

> Can you provide me with a data dump across all offices of all bookings, including cruise revenue, names of pax [passengers], address info, names of agent if any, including address info, booking dates, cruise name, locations, birthdates, emails, that we have in nvs…the raw data will be fine.

(Verified Complaint, ¶19; Exhibit B to Verified Complaint.)

A data dump, also known as a database dump, is the transfer of a large amount of data from one system or location to another. (Verified Complaint, ¶20.)

Novello's data dump request included data comprising all Leisure's Trade Secrets. (Verified Complaint, ¶21.)

Novello's request that DMS transfer All Leisure's Trade Secrets to him personally was for his own use and benefit and probable use in competition against All Leisure after he left the company. (Verified Complaint, ¶22.)

On October 14, 2012 at 10:52 a.m., Lee sent an email to Novello, which stated:

> Yes. I will pull it today. It's going to be a large file so if I can't zip it and email it to you, I'll put it in a CD and give it to you on Tuesday. Or do you need it before that?

(Verified Complaint, ¶23; Exhibit C to Verified Complaint.)

On October 16, 2012 at 6:05 p.m., Novello sent an email to Lee, stating: "Can you zip me the information I requested, as I assume you forgot to give me a CD with it." (Verified Complaint, ¶24; Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:20 p.m., Lee sent an email to Novello, stating: "Yes, I have it and did forget to burn the CD. I'm going to try and send it to you via YouSendit now."

(Verified Complaint, ¶25; Composite Exhibit D to Verified Complaint.)

YouSendit is a digital file delivery company that lets users send, receive and track files on demand, including the ability to share folders and sign documents. The sender can enter the recipients' e-mail addresses, attach the file and send it; the recipients receive an email notification with a Uniform Resource Locator ("URL") that allows them download the file. (Verified Complaint, ¶26.)

On October 16, 2012 at 6:27 p.m., Novello sent an email to Lee, stating: "If you cannot, just drop it in the mail to 9407 Bridgebrook Drive, Boca Raton, FL 33496 as I may [sic] from home some days next week." (Verified Complaint, ¶27; Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:48 p.m., Lee sent an email to Novello, stating in pertinent part: "It's sending via YouSendit now. Should be receiving it shortly." (Verified Complaint, ¶28; Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:50 p.m., YouSendit sent an email to Lee delivering the data files requested by Novello. The link to All Leisure's data files was then sent to Novello so he could access and download All Leisure's data. (Verified Complaint, ¶29; Composite Exhibit D to Verified Complaint.)

On October 16, 2012 at 6:52 p.m., Novello sent an email to Lee, stating in pertinent part: "When I do leave, they are screwed because no one will do what I did." (Verified Complaint, ¶30; Composite Exhibit D to Verified Complaint.)

On October 17, 2012 at 7:01 p.m., Lee sent an email to Novello, stating in pertinent part: "I have no doubt that they will be screwed when you're gone." (Verified Complaint, ¶31; Composite Exhibit D to Verified Complaint.)

On October 24, 2012 at 2:47 p.m. Novello sent an email to Lee, stating: "Any chance I

can get this ??" Novello was referring to the "data dump" of All Leisure's proprietary and confidential information and data, which he previously requested from Lee. (Verified Complaint, ¶32; Composite Exhibit D to Verified Complaint.)

On October 24, 2012 at 2:54 p.m., Lee sent an email to Novello, stating: "I sent it to you, remember? You got a file from YouSendit?" (Verified Complaint, ¶33; Composite Exhibit D to Verified Complaint.)

On October 24, 2012 at 3:09 p.m., Lee sent an email to Novello, stating: "Can you check your email from last Tuesday [October 16, 2012] at 6:50pm? You should also be able to click on the link below." (Verified Complaint, ¶34; Composite Exhibit D to Verified Complaint.)

On October 24, 2012 at 3:19 p.m., Novello sent an email to Lee, stating: "I'm uploading now...." (Verified Complaint, ¶35; Composite Exhibit D to Verified Complaint.)

The data files transmitted to Novello by DMS are All Leisure's Trade Secrets. (Verified Complaint, ¶36.)

On October 25, 2012, All Leisure terminated Novello's employment. (Verified Complaint, ¶37.)

The day his employment was terminated, Novello acknowledged that All Leisure maintained confidential and proprietary information and there could be implications if an employee took such information. (Verified Complaint, ¶38.)

All Leisure first discovered Novello's and DMS' wrongful acts on November 15, 2012, after a search of his company email. (Verified Complaint, ¶39.)

Novello and DMS, through improper means, specifically theft and breach of a duty to maintain the secrecy of the All Leisure's Trade Secrets, misappropriated or there is a high degree of probability of inevitable and immediate misappropriation of All Leisure's Trade Secrets. Novello has disclosed or used or is likely to disclose or use All Leisure's Trade Secrets without

the express or implied consent of All Leisure. DMS still possesses All Leisure's Trade Secrets and has improperly disclosed such information and data to Novello or used or is likely to disclose or use All Leisure's Trade Secrets for the benefit of itself and others. (Verified Complaint, ¶46.)

## ARGUMENT

The four factors that courts consider in determining whether to grant a temporary restraining order are the same as those for a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *Schiavo v. Schiavo,* 403 F.3d 1223, 1225-26 (11th Cir. 2005). In considering the factors here, a temporary restraining order should be granted.

### I.   ALL LEISURE IS LIKELY TO SUCCEED ON THE MERITS

The undisputed facts, as supported by the Verified Complaint establish that All Leisure has a substantial likelihood of prevailing on its claim for misappropriation of trade secrets.

The Uniform Trade Secrets Act, Fla. Stat. §§ 688.001, et seq., permits injunctive relief to redress any actual or threatened misappropriation of trade secrets. The elements of the claim are that: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing Fla. Stat. § 688.002).

All Leisure has expended considerable money and time developing and maintaining its Trade Secrets and proprietary and valuable information. (Verified Complaint, ¶8.)

Trade secrets are broadly defined under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, et. seq. All Leisure's business and corporate strategies, business plans, product strategies, product cost and pricing information, customer lists and information, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial information, contracts, agreements, computer programs, technical processes, manuals, and other information pertaining to the financial condition, business affairs or business prospects of All Leisure, easily qualify for protection as trade secrets. Fla. Stat. § 688.002(4).

Florida law considers a business's customer lists and the information contained therein to be trade secrets subject to protection. *Marine Turbo Engineering, Ltd. v. Turbocharger Servs. Worldwide, LLC*, 2011 WL 6754058, at *9 (S.D. Fla. Dec. 22, 2011); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F.Supp.2d 1346, 1351 (M.D. Fla.2002) (citing cases in all three Florida federal districts, holding that the plaintiffs customer lists and the information on those lists constituted trade secrets under Florida law, and granting a preliminary injunction enjoining the defendants from, *inter alia*, soliciting the clients on the list at issue notwithstanding the fact that the former employee-defendant had not signed an employment agreement containing non-disclosure/confidentiality and non-solicitation provisions); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1557 (S.D. Fla. 1992) ("Regardless of who compiled the customer list, however, it is clearly protected under *Hapney* [*v. Central Garage, Inc.*, 579 So. 2d 127 (Fla. 2d DCA 1991).] The Hapney court's ultimate holding was that 'trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests subject to protection[.]"), *aff'd*, 2 F.3d 405 (11th Cir. 1993); *Kavanaugh v. Stump*, 592 So. 2d 1231, 1231 (Fla. 5th DCA 1992) ("Customer lists can constitute trade secrets where the lists are acquired or compiled through the industry of the owner of the

lists and are not just a compilation of information commonly available to the public."); *East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001) (finding customer list to be a trade secret); *Unistar Corp. v. Child*, 415 So. 2d 733, 734 (Fla. 3d DCA 1982) (finding customer list to be a trade secret where list was "distillation of a larger list of financial planners, reflecting considerable effort, knowledge, time and expense on the part of the plaintiff); *Fortune Personnel Agency of Ft. Lauderdale, Inc. v. Sun Tech Inc. of South Florida*, 423 So. 2d 545, 545 (Fla. 4th DCA 1982) (recognizing customer lists as a protectable trade secret).

All Leisure's Trade Secrets and proprietary and valuable information are not generally known to the public, and are not readily ascertainable by proper means. (Verified Complaint, ¶10.) All Leisure took precautionary measures to protect All Leisure's Trade Secrets, including, but not limited to, instituting a data protection policy, which governed employees' access to All Leisure's Trade Secrets, required the use and updating of passwords, and set forth requirements for storage and physical security (desks, doors, visitors, laptops and storage devices) of such information and data. (Verified Complaint, ¶11.)

"The law imposes upon every employee a duty not to use the employer's trade secrets for his own benefit, if the secret was acquired by the employee in the course of his employment. *Unistar Corp. v. Child*, 415 So. 2d 733, 734 (Fla. 3d DCA 1984). Misappropriation, pursuant to Fla. Stat. § 688.002(2), is a forgone conclusion where a trusted employee discloses trade secrets after receiving them under circumstances of obvious confidentiality and contractual obligations. *Concept, Inc. v. Thermotemp, Inc.*, 553 So. 2d 1325 (Fla. 2d DCA 1989). Moreover, as to any trade secrets that may not yet have been disclosed, Fla. Stat. § 688.003 specifically provides for injunctive relief against actual and threatened misappropriation. *See also Alloy Fasteners*, 664 So.2d at 59." *Stoneworks, Inc., v. Empire Marble and Granite, Inc.*, 1998 WL 998962, at *4 (S.D. Fla. Nov. 20, 1998):

The fact that an employee did not sign a non-disclosure/confidentiality agreement is not dispositive. Florida law imposes upon every employee a duty not to use the employer's trade secrets for his own benefit, if the secret was acquired by the employee in the course of his employment. *Unistar*, 415 So. 2d at 734; *Dunn*, 191 F.Supp.2d at 1350-51 (M.D. Fla. 2002) (quoting *Unistar*).

The verified facts also establish that having decided to leave the employ of All Leisure, and without the knowledge of All Leisure, Novello aided and assisted by DMS, requested and obtained All Leisure's Trade Secrets without the express or implied consent of All Leisure. For all these reasons, there is a substantial likelihood that All Leisure will prevail on this claim.

## II.     IRREPRABLE HARM WILL BE SUFFERED ABSENT A TRO

Novello is privy to All Leisure's Trade Secrets, all of which may be used for his benefit or the benefit of a competing company and to the detriment of All Leisure. In addition, DMS still possesses All Leisure's Trade Secrets and has improperly disclosed such information and data to Novello or used or is likely to disclose or use All Leisure's Trade Secrets for the benefit of itself and others. All Leisure's Trade Secrets were developed over an extended period of time by and at great expense of All Leisure, and the dissemination of this confidential and proprietary information to All Leisure's competitors will provide them with a tangible advantage in their efforts to compete with All Leisure.

Here, All Leisure's Trade Secrets, including its protected client lists and data (which are the life-blood of its business) have been misappropriated, and All Leisure can only speculate as to its damages at this time. Injuries such as this are irreparable. *See Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) ("[T]he loss of customers and goodwill is an irreparable injury." (internal quotations, citations omitted)); *Marine Turbo Eng'g, Ltd.*, 2011 WL 6754058, at *10 (finding that injuries stemming from stolen trade secrets are "not easily

quantifiable in monetary terms"); *Hatfield v. AutoNation, Inc.*, 939 So. 2d 155, 157 (Fla. 4th DCA 2006) ("[A]n injury is irreparable where the damage is estimable only by conjecture, and not by any accurate standard." (quoting *JonJuan Salon, Inc. v. Acosta*, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006)); *I.C. Sys., Inc.*, 824 So. 2d at 287 (characterizing damages as irreparable where use of trade secrets and customer lists were at stake).

Moreover, inadequate remedy at law is presumed when trade secrets have been misappropriated. As the Court stated in *Dotolo v. Schouten*, 426 So. 2d 1013, 1015 (Fla. 2d DCA 1983) (holding plaintiffs were entitled to temporary injunction);

> The appellants contend that injunctive relief is the only complete and adequate remedy to stop the appellees' continuing misappropriation of their secret formula. We agree. **They argue that irreparable harm and inadequate remedy at law should be presumed in an action for injunctive relief with respect to the misappropriation of a trade secret. We agree**.

(Emphasis added.) *See also Unistar*, 415 So. 2d 733 (irreparable harm is to be presumed upon theft of trade secrets). Novello stole All Leisure's Trade Secrets. Injunctive relief is the only appropriate relied to prohibit Novello and DMS from continuing misappropriation and unauthorized use and disclosure of All Leisure's Trade Secrets.

### III. THE BALANCE OF HARMS WEIGHS DECISIVELY IN FAVOR OF ALL LEISURE

The balance of harms tips sharply in favor of All Leisure because a temporary restraining order would simply keep the *status quo* to prevent irreparable harm pending a hearing of an application for preliminary injunction.

All Leisure has a statutorily protected right to preserve its most confidential and proprietary information in a manner that shields All Leisure from damage that could be caused by someone acquiring or disclosing the information through improper means. *See PharMerica, Inc. v. Arledge*, 2007 WL 865510 (M.D. Fla. Mar. 21, 2007), at *8 (citing Fla. Stat. § 688.002). By contrast, Defendants have no right to keep All Leisure's confidential and proprietary, trade

BERGER SINGERMAN    Boca Raton   Fort Lauderdale   Miami   Tallahassee
attorneys at law
4666308-1                                          - 12 -
350 East Las Olas Boulevard   Suite 1000   Fort Lauderdale, Florida 33301   Telephone 954 525 9900   Facsimile 954 523 2872

secret protected information or to use it for their benefit in competition with All Leisure, particularly given that the information was developed at great expense and effort by All Leisure. The denial of injunctive relief would reasonably be anticipated to cause All Leisure to lose clients and trade secrets. This potential harm clearly and greatly outweighs the consequences (if any) of the temporary restraining order to Defendants, especially considering the inadequacy of All Leisure's remedies at law.

### IV. THE PUBLIC INTEREST FAVORS ISSUANCE OF A TRO

The granting of injunctive relief is not contrary to any public interest or the public health, safety and welfare. On the contrary, issuance of injunctive relief is in the public interest. Florida law clearly recognizes that protecting trade secrets furthers the public interest. *East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001) ("Finally, as to the fourth prong, it is apparent that an injunction prohibiting a former employee from using trade secrets to solicit existing customers clearly does not disserve the public interest of protecting legitimate business interests."); *Lynch v. Silcox*, 2001 WL 1200656, *6 (S.D. Fla. 2001) ("Issuance of a preliminary injunction will promote the public interest in: (i) protection of trade secret client lists and other confidential and trade secrets information and (ii) enforcement of reasonable contracts."); *see also*, *Dotolo*, 426 So. 2d at 1015 (holding plaintiffs were entitled to temporary injunction in light of tortuous interference and trade secrets violation).

### V. ONLY A NOMINAL BOND SHOULD BE REQUIRED

Although Rule 65(c) requires a bond to support issuance of a temporary injunction or preliminary restraining order, the bond required here should be nominal. The documents, data and information improperly sent to Novello from DMS contain All Leisure's Trade Secrets and other confidential and proprietary information. Novello has no right to such documents, data and information. The requested restraint would only preserve the status quo, protect All Leisure's

rights and would in no way harm Novello and DMS. Accordingly, All Leisure submits that the requisite bond should be minimal, and no more than $5,000.

## CONCLUSION

For the foregoing reasons, All Leisure respectfully requests that the Court grant its Emergency *Ex Parte* Motion for Temporary Restraining Order.

Dated this 27th day of November, 2012.

By: /s/ Jeffrey Wertman
Leonard K. Samuels
Florida Bar No. 501610
LSamuels@bergersingerman.com
Jeffrey S. Wertman
Florida Bar No. 003093
JWertman@bergersingerman.com
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, 10th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872

*Attorneys for Plaintiff, All Leisure Holidays Limited, Inc.*